# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CORY HECHLER, Individually and On
Behalf of All Others Similarly Situated,

          Plaintiff,

     v.

DIDI GLOBAL INC. F/K/A XIAOJU
KUAIZHI INC., WILL WEI CHENG,
ALAN YUE ZHUO, JEAN QING LIU,
STEPHEN JINGSHI ZHU, ZHIYI CHEN,
MARTIN CHI PING LAU, KENTARO
MATSUI, ADRIAN PERICA, DANIEL
YONG ZHANG, GOLDMAN SACHS
(ASIA) L.L.C., MORGAN STANLEY &
CO. LLC, J.P. MORGAN SECURITIES
LLC, BOFA SECURITIES, INC.,
BARCLAYS CAPITAL INC., CHINA
RENAISSANCE SECURITIES(HONG
KONG) LIMITED, CHINA
INTERNATIONAL CAPITAL
CORPORATION HONG KONG
SECURITIES LIMITED, CITIGROUP
GLOBAL MARKETS INC., GUOTAI
JUNAN SECURITIES (HONG KONG)
LIMITED, HSBC SECURITIES (USA)
INC.,UBS SECURITIES LLC, BOCCI
ASIA LIMITED, BOCOM
INTERNATIONAL SECURITIES
LIMITED, CCB INTERNATIONAL
CAPITAL LIMITED, CLSA LIMITED,
CMB INTERNATIONAL CAPITAL
LIMITED, FUTU INC., ICBC
INTERNATIONAL SECURITIES
LIMITED,MIZUHO SECURITIES USA
LLC, and TIGER BROKERS (NZ)
LIMITED,

          Defendants.

Case No.

**CLASS ACTION COMPLAINT FOR
VIOLATION OF FEDERAL
SECURITIES LAWS**

**JURY TRIAL DEMANDED**

Plaintiff Cory Hechler ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of the filings of DiDi Global Inc. f/k/a Xiaoju Kuaizhi Inc. ("DiDi" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (b) review of press releases, news and security analyst reports concerning DiDi; and (c) review of other publicly available information the initial public offering and trading of DiDi securities.

## NATURE OF THE ACTION

1.      Plaintiff brings this action as a class action on behalf of persons and entities that purchased or otherwise acquired DiDi: (a) American Depositary Shares ("ADSs" or "shares") pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's June 2021 initial public offering ("IPO" or the "Offering") and/or (b) securities between June 30, 2021 and July 2, 2021, inclusive. Plaintiff's claims against the Defendants are for alleged violations of the Securities Act of 1933 (the "Securities Act").

2.      DiDi represents itself as the world's largest vehicle-for-hire company, offering four services in four categories: shared mobility, auto solutions, electronic mobility, and autonomous driving. The Company claims to be the "go-to brand in China for shared mobility," offering a range of services including ride hailing, taxi hailing, chauffeur, and hitch.

3.      On June 30, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which was incorporated into the Registration Statement. In its IPO, the Company sold approximately 316,800,000 shares priced at $14.00 per share. Four (4) ADSs represent one (10

DiDi Class A ordinary share. The Company was paid approximately $4,331.6 million for the shares after underwriting discounts and commissions.

4.      According to *The Wall Street Journal*, three months prior to the IPO, China's cyberspace regulator, the Cyberspace Administration of China ("CAC"), advised DiDi to postpone its IPO due to Chinese national security concerns and for DiDi to "conduct a thorough self-examination of its network security."

5.      The CAC's admonition to DiDi to postpone its IPO to address national security concerns and to thoroughly examine its network security were material facts not disclosed in the Registration Statement.

6.      On July 2, 2021, the CAC announced that it had commenced an investigation of DiDi to protect national security and the public interest and directed that DiDi cease new user registrations during the CAC's investigation.

7.      On July 4, 2021, DiDi reported that the CAC ordered smartphone app stores to stop offering the "DiDi Chuxing" app because it "collect[ed] personal information in violation of relevant [People's Republic of China] laws and regulations." Though users who previously downloaded the app could continue to use it, DiDi stated that "the app takedown may have an adverse impact on its revenue in China."

8.      On Sunday, July 5, 2021, *The Wall Street Journal* published its report that three months prior to the IPO the CAC advised DiDi to postpone its IPO due to PRC security concerns.  On Monday, July 6, 2021, the market price of DiDi shares plummeted $3.04 per share, or 19.6%, to close at $12.49 per share on July 6, 2021, on heavy trading volume of 225.5 million shares.

9.      The market price of DiDi shares has never recovered.  As of August 19, 2021, the price of DiDi shares had fallen to $7.43, about 47% below the $14.00 IPO price.

10.     The Registration Statement was materially false and misleading and omitted to state material adverse facts. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that DiDi's apps did not comply with applicable laws and regulations governing privacy protection and the collection of personal information within the PRC; (2) that prior to the IPO DiDi was advised by the CAC to postpone its IPO because of its collection and storage of personal information of its users in violation of PRC law; (3) that enforcement of PRC law would have a material adverse effect on its financial results and operations going forward; and (4) Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

11.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 22 of the Securities Act (15 U.S.C. § 77v).

14.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

15.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

16.    Plaintiff Cory Hechler, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired DiDi common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.    Defendant DiDi is incorporated under the laws of the Cayman Islands with its principal executive offices located in Beijing, China. DiDi's shares trade on the New York Stock Exchange under the symbol "DIDI."

18.    Defendant Will Wei Cheng ("Cheng") was, at all relevant times, the Chairman of the Board of Directors and the Chief Executive Officer ("CEO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.    Defendant Alan Yue Zhuo ("Zhuo") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.    Defendant Jean Qing Liu ("Liu") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21.    Defendant Stephen Jingshi Zhu ("Zhu") was a director of the Company  and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.    Defendant Zhiyi Chen ("Chen") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

5

23.     Defendant Martin Chi Ping Lau ("Lau") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendant Kentaro Matsui ("Matsui") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.     Defendant Adrian Perica ("Perica") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.     Defendant Daniel Yong Zhang ("Zhang") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

27.     Defendants Cheng, Zhuo, Liu, Zhu, Chen, Lau, Matsui, Perica, and Zhang are collectively referred to hereinafter as the "Individual Defendants."

28.     Defendant Goldman Sachs (Asia) L.L.C. ("Goldman Sachs") served as an underwriter for the Company's IPO.

29.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") served as an underwriter for the Company's IPO.

30.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

31.     Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO.

32.     Defendant Barclays Capital Inc. ("Barclays") served as an underwriter for the Company's IPO.

33.     Defendant China Renaissance Securities (Hong Kong) Limited ("China Renaissance") served as an underwriter for the Company's IPO.

34.     Defendant China International Capital Corporation Hong Kong Securities Limited ("China International") served as an underwriter for the Company's IPO.

35.     Defendant Citigroup Global Markets Inc. ("Citigroup") served as an underwriter for the Company's IPO.

36.     Defendant Guotai Junan Securities (Hong Kong) Limited ("Guotai") served as an underwriter for the Company's IPO.

37.     Defendant HSBC Securities (USA) Inc. ("HSBC") served as an underwriter for the Company's IPO.

38.     Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO.

39.     Defendant BOCI Asia Limited ("BOCI") served as an underwriter for the Company's IPO.

40.     Defendant BOCOM International Securities Limited ("BOCOM") served as an underwriter for the Company's IPO.

41.     Defendant CCB International Capital Limited ("CCB") served as an underwriter for the Company's IPO.

42.     Defendant CLSA Limited ("CLSA") served as an underwriter for the Company's IPO.

43.     Defendant CMB International Capital Limited ("CMB") served as an underwriter for the Company's IPO.

44.     Defendant Futu Inc. ("Futu") served as an underwriter for the Company's IPO.

45.     Defendant ICBC International Securities Limited ("ICBC") served as an underwriter for the Company's IPO.

46.     Defendant Mizuho Securities USA LLC ("Mizuho") served as an underwriter for the Company's IPO.

47.     Defendant Tiger Brokers (NZ) Limited ("Tiger Brokers") served as  an underwriter for the Company's IPO.

48.     Defendants Goldman Sachs, Morgan Stanley, J.P. Morgan, BofA, Barclays, China Renaissance, China International, Citigroup, Guotai, HSBC, UBS, BOCI, BOCOM,  CCB, CLSA, CMB, Futu, ICBC, Mizuho, and Tiger Brokers are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.      The False or Misleading Registration Statement

49.     On June 10, 2021, the Company filed its Registration Statement on Form F-1 with the SEC to register its Class A ordinary shares, which forms part of the Registration Statement.

50.     On June 24, 2021, the Company filed its Registration Statement on Form F-6 with the SEC to register its ADSs, which forms part of the Registration Statement.

51.     On June 29, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form F-1MEF, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

52.     On June 30, 2021, the Company filed its prospectus on Form 424B4  with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 316,800,000 shares at a price of $14.00 per share. Four (4) ADSs represent one (1)  Class A ordinary share. The Company received proceeds of approximately $4.332 billion from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used to invest in the Company's technology capabilities, grow its

presence in certain international markets, introduce new products and expand existing offerings, and general corporate purposes.

53.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing preparation of Registration Statements.

54.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that they were having, and were reasonably likely to have, an impact on the Company's continuing operations.

55.     The Registration Statement emphasized that DiDi relied on the market in China for its operations. It stated that "China is the best starting place for realizing [DiDi's] vision for mobility" and that "China's mobility market is expected to reach US$3.9 trillion by 2040, by which time the penetration of shared mobility and electric vehicles is expected to have increased to 35.9% and 50.2%, respectively."

56.     DiDi also stated that "[i]n 2020, the number of ride hailing transactions from our top five cities in China constituted approximately 20% of our total China ride hailing transactions." Therefore, "any changes to local laws or regulations within these cities that affect [the Company's] ability to operate or increase [its] operating expenses in these markets would have an adverse effect on our business."

57.     The Company purportedly "follow[ed] strict procedures in collecting, transmitting, storing and using user data pursuant to [its] data security and privacy policies." In fact, the Registration Statement claimed that DiDi "collect[s] personal information and other data from [its] users and use such data in the course of [its] operations only with their prior consent."

58.    The Registration Statement also acknowledged that DiDi is "subject to numerous [] use, disclosure and protection of certain types of data in various jurisdictions . . . including the Data Security Law promulgated by the Standing Committee of the National People's Congress of China in June 2021, which will take effect in September 2021." The Registration Statement also stated the following rules promulgated by the Cyberspace Administration of China that apply to DiDi, in relevant part:

> With respect to the security of information collected and used by mobile apps, pursuant to the Announcement of Conducting Special Supervision against the Illegal Collection and Use of Personal Information by Apps, which was issued by the Cyberspace Administration of China, the MIIT, the Ministry of Public Security, and the State Administration for Market Regulation on January 23, 2019, app operators shall collect and use personal information in compliance with the Cyber Security Law and shall be responsible for the security of personal information obtained from users and take effective measures to strengthen personal information protection. Furthermore, app operators shall not force their users to make authorization by means of default settings, bundling, suspending installation or use of the app or other similar means and shall not collect personal information in violation of laws, regulations or breach of user agreements. Such regulatory requirements were emphasized by the Notice on the Special Rectification of Apps Infringing upon User's Personal Rights and Interests, which was issued by MIIT on October 31, 2019. On November 28, 2019, the Cyberspace Administration of China, the MIIT, the Ministry of Public Security and the State Administration for Market Regulation jointly issued the Methods of Identifying Illegal Acts of Apps to Collect and Use Personal Information. This regulation further illustrates certain commonly seen illegal practices of app operators in terms of personal information protection and specifies acts of app operators that will be considered as "collection and use of personal information without users' consen[t.]

59.    As to data privacy, the Registration Statement disclosed certain risks that **_could_** affect the Company. Specifically, it stated, in relevant part:

> Despite our efforts to comply with applicable laws, regulations and other obligations relating to privacy, data protection and information security, **_it is possible that our practices, offerings or platform could fail to meet all of the requirements imposed on us by such laws, regulations or obligations. Any failure on our part to comply with applicable laws or regulations_** or any other obligations relating to privacy, data protection or information security, or any compromise of security that results in unauthorized access, use or release of personally identifiable information or other data, or the perception or allegation

that any of the foregoing types of failure or compromise has occurred, could damage our reputation, discourage new and existing drivers and riders from using our platform or *result in investigations, fines, suspension of one or more of our apps, or other penalties by government authorities and private claims or litigation, any of which could materially adversely affect our business, financial condition and results of operations.* Even if our practices are not subject to legal challenge, the perception of privacy concerns, whether or not valid, may harm our reputation and brand and adversely affect our business, financial condition and results of operations.

60.    Regarding regulatory oversight, the Registration Statement stated that in April 2021, it had participated in a meeting with Chinese regulators regarding compliance with anti-monopoly, anti-unfair competition, tax, and other related laws. Following the meeting, the Company conducted a self-examination as to certain issues, but the Registration Statement stated: that DiDi "cannot assure you that the regulatory authorities will be satisfied with our self-inspection results or that we will not be subject to any penalty with respect to . . . privacy protection." Specifically, it stated:

For example, in April 2021, the State Administration for Market Regulation, together with the Cyberspace Administration and the State Administration of Taxation, held a meeting with more than 30 major internet companies in China, including us. All companies that participated in the meeting were required to conduct a self-inspection within one month to identify and correct possible violations of anti-monopoly, anti-unfair competition, tax and other related laws and regulations and submit their compliance commitments for public supervision. As of the date of this prospectus, we have completed the self-inspection and the relevant governmental authorities have conducted onsite inspections of our company. *Our self-inspection uncovered a number of areas which could be deemed problematic from the compliance perspective, including potential anticompetitive practices in certain ancillary services such as electric vehicle charging, disclosure of driver income and related policies, inaccurate marketing and promotional materials, potentially unfair pricing in the community group buying business* which has ceased to be our consolidated subsidiary since March 31, 2021, and failure to make filings of certain transactions subject to merger control review. We have made efforts to correct or improve the above areas to ensure compliance to the extent we can. However, *we cannot assure you that the regulatory authorities will be satisfied with our self inspection results or that we will not be subject to any penalty with respect to any violations of* anti-monopoly, anti-unfair competition, pricing, advertisement, *privacy protection*, food safety, product quality, tax and other related laws and regulations. We expect that these areas will receive greater and  continued

attention and scrutiny from regulators and the general public going forward. As a result, we may be subject to additional inspections and/or investigations and may incur additional costs and expenses, devote more of our management's attention and allocate additional resources to comply with the relevant laws and regulations and other requirements of relevant government authorities.

61.     The Registration Statement was materially false and misleading and omitted to state: (1) that DiDi's apps did not comply with applicable laws and regulations governing privacy protection and the collection of personal information within the PRC; (2) that prior to the IPO DiDi was advised by the CAC to postpone its IPO because of its collection and storage of personal information of its users in violation of PRC law; (3) that enforcement of PRC law would have a material adverse effect on its financial results and operations going forward; and (4) Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**B.     Materially False and Misleading Public Statements**

62.     The Class Period begins on June 30, 2021. On that day, the Company filed its Prospectus, which contained the statements alleged in ¶¶ 55-60.

63.     The statements identified in ¶¶ 55-60 and ¶ 62 were materially false and/or misleading statements, and also failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that DiDi's apps did not comply with applicable laws and regulations governing privacy protection and the collection of personal information within the PRC; (2) that prior to the IPO DiDi was advised by the CAC to postpone its IPO because of its collection and storage of personal information of its users in violation of PRC law; and (3) that enforcement of PRC law would have a material adverse effect on its financial results and operations going forward.

64.     The truth began to emerge on July 2, 2021, when the CAC stated that it had launched an investigation into DiDi to protect national security and the public interest.

65.     On this news, the Company's share price fell $0.87, or approximately 5.3%, to close at $15.53 per share on July 2, 2021, on heavy trading volume.

66.     Also on July 2, 2021, DiDi issued a press release that stated:

DiDi Global Inc. ("DiDi" or the "Company") (NYSE: DIDI), the world's leading mobility technology platform, today announced that pursuant to the announcement posted by the PRC's Cyberspace Administration Office on July 2, 2021, DiDi is subject to cybersecurity review by the authority. During the review, DiDi is required to suspend new user registration in China.

DiDi will fully cooperate with the PRC government authority during the review. It plans to conduct a comprehensive examination of cybersecurity risks and continue to improve on its cybersecurity systems and technology capabilities.

Apart from the suspension of new user registration in China, DiDi maintains normal operation.

67.     On Sunday, July 4, 2021, DiDi reported that the CAC ordered smartphone app stores to stop offering the "DiDi Chuxing" app because it "collect[ed] personal information in violation of relevant PRC laws and regulations." The Company was ordered to make changes to comply with Chinese data protection rules to "ensure the safety of the personal information of users." DiDi stated that it "will strive to rectify any problems, improve its risk prevention awareness and technological capabilities, protect users' privacy and data security, and continue to provide secure and convenient services to its users." Though users who previously downloaded the app could continue to use it, DiDi stated that "the app takedown may have an adverse impact on its revenue in China."

68.     On July 5, 2021, *The Wall Street Journal* reported that the CAC had asked the Company as early as three months prior to the IPO to postpone the offering because of national security concerns and to "conduct a thorough self-examination of its network security."

69.     On this news, the Company's stock price fell $3.04 per share, or 19.6%, to close at $12.49 per share on July 6, 2021, on unusually heavy trading volume.

70.     The market prices of DiDi shares have continued to decline. By the commencement of this action, the Company's stock was trading as low as $7.30 per share, a nearly 48% decline from the $14 per share IPO price.

## CLASS ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired DiDi: (a) ADSs issued in connection with the Company's IPO; and/or (b) securities between June 30, 2021 and July 2, 2021, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

72.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, DiDi's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of DiDi shares were traded publicly during the Class Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by DiDi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

73.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

74.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

75.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of DiDi; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

## OMITTED MATERIAL FACTS

76.     The market for DiDi's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, DiDi's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired DiDi's securities relying upon the integrity of the market price of the Company's securities and market information relating to DiDi, and have been damaged thereby.

77.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of DiDi's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially

false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about DiDi's business, operations, and prospects as alleged herein.

78.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about DiDi's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the  Class  Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act
### (Against All Defendants)

79.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

80.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

81.    The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

82.     DiDi is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

83.     As issuer of the shares, DiDi is strictly liable to Plaintiff and the Class for the misstatements and omissions.

84.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

85.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

86.     Plaintiff acquired DiDi shares pursuant and/or traceable to the Registration Statement for the IPO.

87.     Plaintiff and the Class have sustained damages. The value of DiDi shares has declined substantially subsequent to and due to the Defendants' violations.

## SECOND CLAIM

### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

88.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

89.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

90.     The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

91.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure, certifying the putative class as requested herein, designating Plaintiff's as Class Representative, and appointing the undersigned counsel as Class Counsel for the putative class;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury.

Dated: September 8, 2021                    Respectfully Submitted By:

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**


s/ *Gary S. Graifman*
Gary S. Graifman, Esq.
Melissa R. Emert, Esq.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977
memert@kgglaw.com
ggraifman@kgglaw.com
T: 845-356-2570
F: 845-356-4335

**SLYNE LAW LLC**
Patrick Slyne, Esq.

800 Westchester Avenue, N641
Rye Brook, NY
Patrick.Slyne@SlyneLaw.com
T: (914) 279-7000
F: (914) 653-8122

***Attorneys for the Plaintiff and Members of
the Putative Class***